UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-1672 JGB (DPx)** | Date | September 30, 2016 |
| Title | *Reginald Wayne Essley et al. v. Wells Fargo Bank, N.A. et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING Plaintiffs' Motion to Remand (Dkt. No. 9); (2) REMANDING this action to the California Superior Court, County of San Bernardino; and (3) VACATING the October 3, 2016 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' Motion to Remand the Action to State Court. (Dkt. No. 9). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of and in opposition to the motion, the Court GRANTS Plaintiffs' Motion to Remand.

## I.   INTRODUCTION

On July 8, 2016, Reginald Wayne Essley and Monique Nicole Essley (collectively, "Plaintiffs") initiated this action against Wells Fargo Bank, N.A. and NBS Default Services, LLC (collectively, "Defendants") in California Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1-2.) Their Complaint alleges that Defendants initiated a Trustee Sale on Plaintiffs' home while Plaintiffs' loan modification application was still pending, which constitutes "dual tracking" in violation of the California Homeowner's Bill of Rights, Civil Code § 2923.6. (Complaint at 5-7.)

Defendants removed the action to this Court on August 1, 2016 on the basis of diversity jurisdiction. (Not. of Removal, Dkt. No. 1.) On August 4, 2016, Plaintiffs filed a motion to remand the action to state court. (Motion, Dkt. No. 9.) Defendants opposed Plaintiffs' Motion

on September 12, 2016.  (Opp'n, Dkt. No. 19.)  In support of their Opposition, Defendants submitted a Request for Judicial Notice.[1]  ("RJN," Dkt. No. 20.)  On September 19, 2016, Plaintiff filed a reply memorandum in support of his motion.  (Reply, Dkt. No. 22.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013).  As such, federal courts only have original jurisdiction over civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1331, 1332.

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Jackson v. Specialized Loan Servicing, LLC, No. CV 14-05981 MMM PLAX, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014) (quoting Gaus).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Jackson, 2014 WL 5514142, at *6.  Doubts as to removability must be resolved in favor of remanding the case to state court.  Id. (internal citations omitted).

When removal is sought on diversity grounds, generally "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).  If the complaint filed in state court "alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."  Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).  "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the

---

[1] Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is. . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Here, Defendants ask the Court to take notice of Appellants' Brief filed in Garfinkle v. Wells Fargo Bank, Case No. 71-2323 (December 7, 1971) in the United States Court of Appeals for the Ninth Circuit.  (RJN, Ex. A.)  Courts regularly take judicial notice of court filings and other matters of public record.  See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); see also W. Sugar Co-op. v. Archer-Daniels-Midland Co., No. 11-CV-3473 CBM MANX, 2011 WL 11741501, at *2 (C.D. Cal. Oct. 21, 2011) (citing cases where courts took judicial notice of appellate opinions and briefs).  Accordingly, Defendants' request for judicial notice is GRANTED.

jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims in the complaint. Jackson, 2014 WL 5514142, at *8. The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will actually owe. Id. (internal citations omitted).

"To satisfy the amount in controversy requirement, the defendant must either: (1) demonstrate that it is facially evident from the plaintiff's complaint that the plaintiff seeks damages in excess of $75,000, or (2) prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional limit." Beck v. Nationstar Mortgage, No. 3:15-CV-00166 MMD VPC, 2015 WL 6755276, at *3 (D. Nev. Nov. 4, 2015) (citing Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116-17 (9th Cir. 2004)).

### III. DISCUSSION

Plaintiffs' action is based on Defendants' alleged failure to make a written determination on Plaintiffs' completed application for a loan modification before proceeding with a sale of their home. (Complaint.) This practice, referred to as "dual tracking," is prohibited under California Civil Code Section 2923.6, which requires mortgage servicers to provide a written determination that a borrower is or is not eligible for a modification *and* allow the borrower to appeal a denial before conducting a sale. Cal. Civ. Code § 2923.6(c).

Under Section 2924.12, a borrower may bring an action for injunctive relief to enjoin a material violation of this prohibition on dual tracking. Cal. Civ. Code § 2924.12(a)(1). This injunction "shall remain in place and any trustee's sale shall be enjoined" until the defendant remedies the violation—in this case, by making a written determination on Plaintiffs's loan application. Id. Furthermore, where such a violation was "intentional or reckless, or resulted from willful misconduct," the statute provides for an award of the greater of treble actual damages or statutory damages of fifty thousand dollars. Cal. Civ. Code § 2924.12(b). Finally, the statute provides for an award of attorneys' fees and costs to the prevailing party. Cal. Civ. Code § 2924.12(i).

Plaintiffs seek all of these remedies. The Complaint seeks an injunction preventing the Defendants from proceeding with the sale "until such time as Defendants have complied" with their obligations under the statute, the greater of statutory damages or treble actual damages,[2]

---

[2] Plaintiffs incorrectly assert that the statutory amount available is $20,000. (See Complaint ¶ 27.) As noted above, the statute in fact provides for an award of $50,000 where a defendant acted in intentional or reckless violation of the statute, as Plaintiff alleges was the case. Surprisingly, Defendants do not correct Plaintiffs' misconception, despite the fact that this increases the amount in controversy. In any case, given that Plaintiffs cite to the provision in the statute that provides for such an award, and that they clearly seek statutory damages, the Court proceeds under the assumption that Plaintiffs seek the greater of $50,000 or treble damages.

and an award of attorneys' fees reasonably incurred by them in bringing this action to enjoin the sale. (Complaint ¶¶ 27, 29, 31.)

Plaintiffs assert that their monetary damages altogether do not exceed $75,000, noting that the trebling of their actual damages does not exceed $40,000. (Complaint at 14; Motion at 11.) While Defendants quibble with the calculation of Plaintiffs' damages, they do not seriously dispute that Plaintiffs' request for monetary relief does not exceed $75,000. (See Opp'n at 3 ("At minimum, the clear request for monetary relief is between $40,000 and $60,000.")). Instead, Defendants argue that Plaintiffs meet the amount-in-controversy requirement because their request to enjoin the pending trustee's sale places the value of the property or the loan amount at issue—both of which easily exceed the $75,000 threshold. (Opp'n.)

Thus, Plaintiffs' Motion hinges on whether the value of the property or loan factors into the amount in controversy. On this question, the Court notes that it is hardly writing on a clean slate. Numerous courts have previously considered the question of how injunctive relief may be calculated in monetary terms for purposes of meeting the jurisdictional requirement—moreover, they have done so in analogous contexts. The Court lays out the basic principles below.

First, in actions seeking declaratory or injunctive relief, it is "well established" that the amount in controversy is measured "by the value of the object of the litigation." Reyes v. Wells Fargo Bank, N.A., No. C-10-01667JCS, 2010 WL 2629785, at *4 (N.D. Cal. June 29, 2010). In the context of foreclosures, where the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, "then the property is the object of the litigation." Id.; see also Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973) (finding that amount in controversy requirement was met based on market value of property where "the whole purpose of this action is to foreclose the Bank from selling this property in the manner contemplated."); Chapman v. Deutsche Bank Nat'l Tr. Co., 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (where plaintiff seeks to quiet title after foreclosure proceedings, amount in controversy "is the whole of the real estate to which the claim extends") (internal citations omitted); Cabriales v. Aurora Loan Services, 2010 WL 761081 *3 (N.D. Cal. Mar. 2, 2010) (holding that the object of the litigation was the property that plaintiff sought to enjoin defendant from selling); Garcia v. Citibank, N.A, 2010 WL 1658569 *2 (E.D. Cal. Apr. 23, 2010) (same).

Thus, for example, in Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973), a case on which Defendants heavily rely, the Ninth Circuit determined that the plaintiffs met the jurisdictional requirement where they alleged that California's extrajudicial foreclosure procedure violated the Fifth and Fourteenth Amendments of the United States Constitution. There, the plaintiffs contested a provision in their contract with the bank wherein the bank retained the power to sell the property following a change of title to the property. 483 F.2d at 1076. The plaintiffs argued that they had the right to keep paying interest on the property at the same rate as the previous owners and that, because they had been making their payments pursuant to this view, the bank had no right to foreclose on the property. Id. Explaining that the "whole purpose" of the action was to prevent the bank from selling the property, the court calculated the amount in controversy based alternatively on the market value of the house or on

the bank's outstanding interest secured by the property, concluding that under either valuation, the jurisdictional requirement was satisfied. Id.

*However*, the analysis differs where a plaintiff seeks injunctive relief to enjoin a foreclosure sale pending a loan modification and the injunctive relief requested is temporary. Ortiz v. Seterus, Inc., No. LACV1601110JAKJEMX, 2016 WL 2968007, at *3 (C.D. Cal. May 18, 2016). Where this is the case, "[c]ourts have roundly rejected the argument that the amount in controversy is the entire amount of the loan." Vergara v. Wells Fargo Bank, N.A., 2015 WL 1240421, at *2 (C.D. Cal. Mar. 17, 2015); see also Steele v. J.P. Morgan Chase Bank, N.A., No. EDCV 15-657-JGB, 2015 WL 4272276, at *3 (C.D. Cal. July 14, 2015) ("Plaintiffs merely seek a final decision on their loan modification application, and ask the Court to enjoin Defendant from pursuing foreclosure until it has properly complied with HBOR's requirements for loan-modification application review. Thus, the value of the Property itself should not factor into the amount-in-controversy calculus."); Cheng v. Wells Fargo Bank, N.A., No. SACV 10-1764-JST, 2010 WL 4923045, at *2 (C.D. Cal. Dec. 2, 2010) ("[T]he primary relief sought by plaintiff is a temporary delay of the foreclosure proceedings, and the amount of the loan at issue would therefore not be a relevant measure of damages."); Landa v. Flagstar Bank, FSB, No. 10CV1429-L(BGS), 2010 WL 2772629, at *2 (S.D. Cal. July 13, 2010) ("Plaintiffs do not seek to rescind the loan. They continued to make the agreed-upon loan payments and apparently seek to enforce the loan on the agreed-upon terms. Accordingly, the amount in controversy is not properly gauged by the loan amount or the property value."); Quiroga v. Bank of Am., N.A., 2015 WL 4747978, at *3 (C.D. Cal. Aug. 10, 2015) (value of the property and amount due on loan were not appropriate measures of the amount in controversy where the plaintiff sought a loan modification and damages); Baskin v. Wells Fargo Bank, N.A., No. C 11-0825 SBA, 2011 WL 5369123, at *2 (N.D. Cal. Nov. 7, 2011) ("[S]ince Plaintiffs are not seeking to rescind their mortgage, the amount in controversy is not properly gauged by the loan amount.") (internal quotation marks omitted).

Thus, for example, in Vergara v. Wells Fargo Bank, N.A., No. SACV 15-00058-JLS, 2015 WL 1240421, at *2 (C.D. Cal. Mar. 17, 2015), the court determined that the entire value of the loan was not at issue because the plaintiff sought only injunctive relief to enjoin a foreclosure sale for a limited time period: that is, only until after the defendant made a decision on plaintiff's pending loan modification. Noting that the plaintiff did not seek invalidation of the subject loan, the court found that the defendants could not establish the jurisdictionally required amount. 2015 WL 1240421, at *2. This Court recently reached the same conclusion in Cephas-Boyd v. Shellpoint Partners, LLC, No. EDCV16386JGBKKX, 2016 WL 1600828, at *3 (C.D. Cal. Apr. 21, 2016), where the plaintiff sought to enjoin foreclosure while the Court resolved whether she was entitled to a loan modification. Cephas-Boyd v. Shellpoint Partners, LLC, No. EDCV16386JGBKKX, 2016 WL 1600828, at *4 (C.D. Cal. Apr. 21, 2016). In rejecting the defendant's argument that the entire amount of the loan should factor into the amount-in-controversy, the Court reiterated that, as in the cases noted above, the primary relief sought by plaintiff was a temporary delay of the foreclosure proceedings, and the amount of the loan at issue would therefore not be a relevant measure of damages. 2016 WL 1600828, at *4.

Under this framework, it is clear that Plaintiffs' case falls into the latter category of cases, and that the amount in controversy is not properly gauged by the loan amount or value of the home. Plaintiffs nowhere indicate that they seek loan rescision, despite Defendants' arguments to the contrary. Rather, Plaintiffs seek a temporary stay of foreclosure proceedings while Defendants correct their alleged failure to make a written determination on Plaintiffs' loan modification application. That this injunction applies only for this limited purpose is made clear by the language of the Homeowner's Bill of Rights, on which Plaintiffs base their claim: the remedy does not preclude Defendants from ultimately proceeding with foreclosure, but only from doing so while failing to act on Plaintiffs' application. Defendants' reliance on Garfinkle is therefore unavailing: as numerous courts have already explained, the plaintiffs there challenged the lawfulness of the non-judicial foreclosure procedure and sought an injunction prohibiting the lender from selling the property that secured the loan. See, e.g., Cross v. Home Loan Mortgage Corp., No. CV 11-04728 DMG RZX, 2011 WL 2784417, at *2 (C.D. Cal. July 15, 2011) ("Garfinkle differs from the instant case in that the plaintiff there challenged the very constitutionality of California's nonjudicial foreclosure procedure. Judgment for the plaintiff would have prevented the defendant bank from pursuing nonjudicial foreclosure altogether.") Thus, if the challenge by the Plaintiffs in Garfinkle had been successful, the relief that would have followed was a permanent injunction of any foreclosure. Here, in contrast, Plaintiffs seek only a decision on their application prior to any foreclosure proceedings: they do not contest Defendants' right to eventual foreclosure following a decision on their application. Thus, as the cases noted above concluded, neither the home itself nor the amount of the loan may properly be considered the "object" of the litigation and are not, therefore, a proper measure for damages.

Instead, the appropriate test for determining the amount-in-controversy in this case is "the pecuniary result to either party which the judgment would directly produce." Cross v. Home Loan Mortg. Corp., CV 11-04728 DMG (RZx), 2011 WL 2784417, at *2 (C.D. Cal. July 15, 2011). As the Ninth Circuit has explained, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce. In re Ford Motor Co./Citibank (S. Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001). "In other words, where the value of a plaintiff's potential recovery. . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." Id. In this case, a judgment for Plaintiffs in this case would delay—not preclude—any foreclosure sale. Thus, the relevant question is the cost to Defendants from a delay in foreclosure.

Defendants contend that "the cost to Wells Fargo from not being able to foreclose is, at least, the lost opportunity on recovering its loan balance of approximately $640,000." (Opp'n at 8.) Assuming "a 15-month pendency of this action," Defendants explain that, even at a 5% rate of interest, this lost opportunity would constitute $46,000, based on the difference between a foreclosure sale now and one in fifteen months. (Id.) This calculation is based on a valuation of the property at $690,000. (Declaration of Elizabeth Ann Nickel ¶ 11, Ex. H, Appraisal Report.)

However, the Court finds fault with Defendants' assumption that they would be precluded from foreclosing for fifteen months. Under the explicit terms of the statute, the

injunction only applies so long as Defendants do not correct their violation. Here, correcting the violation would require making a determination on Plaintiffs' loan application. According to Plaintiff's Complaint, their loan application was marked as being complete on June 24, 2016. (Complaint ¶ 13.) Accordingly, Defendants could presumably make a decision on Plaintiffs' application immediately, if they have not done so already. Under the statute, if they deny the application, they must then give Plaintiff thirty days from that denial to appeal, and fifteen days from the denial of an appeal before conducting a sale. Altogether, this might represent a delay of two months, not fifteen. Adopting Defendant's 5% interest rate, the lost profits over a two-month delay on a sale would be closer to $6,000, not $46,000. And this amount, together with the $50,000 in statutory damages plus undetermined attorneys' fees, would not necessarily get Plaintiff to the jurisdictional minimum. While the Court recognizes that its calculation is necessarily simplistic and that the delay may, in fact, be longer than two months, it is bound at this stage to resolve ambiguities against removal and in favor of remanding the case to state court. Under this standard, Defendants' evidence to the contrary is insufficient. Because Defendants fail to establish by a preponderance of the evidence that this case involves at least $75,000, the Court concludes that it lacks subject matter jurisdiction.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion and REMANDS this action to the California Superior Court, County of San Bernardino.

The October 3, 2016 hearing is VACATED.

**IT IS SO ORDERED.**